WEBER ELECTRIC CO. v. NATIONAL GAS & ELECTRIC FIXTURE CO.

(Circuit Court of Appeals, Second Circuit. February 6, 1917.)

No. 86.

PATENTS ⬦328—VALIDITY AND INFRINGEMENT—INCANDESCENT LAMP SOCKET.
  The Weber patent, No. 743,207, for an incandescent electric lamp socket, claim 3, is not for a useful or patentable combination while claim 6 is void as too broad; claims 2, 7, and 9 *held* valid, but entitled only to a narrow construction, and, as so construed, not infringed.

Appeal from the District Court of the United States, for the Southern District of New York.

Suit in equity by the Weber Electric Company against the National Gas & Electric Fixture Company. Decree for defendant, and complainant appeals. Affirmed.

The Weber Electric Company is a corporation organized under the laws of the state of New York. It has its principal place of business in the city of Schenectady, in the said state. The National Gas & Electric Fixture Company is a corporation organized under the laws of the state of New York, and is established in business in the city of New York. The suit is brought for an infringement of patent No. 743,207, issued by the United States Patent Office on November 3, 1903, to August Weber, Sr.; August Weber, Jr., and John Weber, assignors to said August Weber, Sr.

Frank C. Curtis, of Troy, N. Y., for appellant.
Francis C. Lowthorp, of Trenton, N. J., for appellee.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. The patent in suit was issued for improvements in incandescent electric lamp sockets. It relates more par-

ticularly to such sockets as are provided with circuit controlling devices. The patentees state:

"Among the objects of the invention are to reduce the number of parts, to render the device more efficient in operation, and to facilitate and reduce the cost of manufacture, particularly with reference to constructing the base portion of the socket of plastic insulating material, such as porcelain, molded to the desired form by means of dies."

The particular mechanical details of construction are the co-ordination and arrangement thereof to effect the desired objects as pointed out in the detailed description of the invention. The alleged novelty of the invention of the patented construction resides in the particular construction "of the insulating base," and the manner in which the switch mechanism is mounted upon or combined with the base. The insulating base comprises two disk-like members, one of which is called the inner base member and the other the outer base member. These disk members are superposed one on the other, and are adapted to be locked or secured together by means of screws or bolts passing through registering openings in the respective members. One of the base members is formed with a T-shaped recess in the face adjacent the base member, in which recess is mounted a bearing frame provided on its outer end with a lug containing a bearing for the end of the switch shaft adjacent the thumb piece of latter. Rigidly connected to the bearing frame by a rivet is a spring contact, generally T-shaped, and having a head lying in the head portion of the recess in one of the base members, which is cut away adjacent the lug to permit the hub of the finger piece or handle to pass. The lamp socket is such as is attached to an electric light fixture or electrolier to support a screw-threaded sleeve into which the base of an ordinary incandescent lamp is screwed, which socket contains switch mechanism for turning the light on or off by making or breaking the electric circuit. Such a lamp socket is adapted to receive, interchangeably with the lamp, a plug on the end of a flexible conductor connected with one of the numerous electrical household devices, such as an electric sad-iron, coffee percolator, toaster, and the like.

In the modern lamp socket the switch mechanism is mounted in one way or another within and upon a supporting insulating base of porcelain, to which is also fixed the screw-threaded brass sleeve to receive the lamp base; and the porcelain base, with said brass sleeve and the switch mechanism, are inclosed within a casing or shell which is usually made of brass. The invention of the patent in suit relates only to the inclosed parts of the socket, and not to the inclosing case.

The plaintiff does not claim that the invention of the patent is revolutionary, but insists that it has resulted in materially improving the socket. The defendant is charged with making, using, and selling incandescent electric lamp sockets made in accordance with the invention described and claimed in the patent in suit. But the action is in fact based upon the sale by the nominal defendant of incandescent electric lamp sockets manufactured by the Union Electric Company of Trenton, N. J. The court below without an opinion has dismissed the bill.

The defendant denied in its answer that the patentees were the original inventors of the improvement purported to be covered by the pat-

ent, and averred that all material or substantial parts of the patents had been described and illustrated in some 22 patents which it named. But upon the argument in this court the validity of the patent was not challenged. Counsel for defendant conceded in his brief that patentable invention is disclosed. The defendant's expert and the plaintiff's expert were not far apart in their views of the prior art. It is not necessary, therefore, to review the various patents of the prior art. It is clear that no prior patent appears in the record which discloses a switch mechanism comprising in part a contact spring adapted to be confined under compression between the base members and thereby to retain the switch mechanism in place by simple engagement therewith of the chamber walls of the base; and, as that is the invention of the patent in suit, the patent is valid.

The record contains a stipulation that the defendant, before the commencement of the suit and since the date of the patent in suit, sold incandescent electric lamp sockets, within the city of New York and in the Southern district of New York, substantially the same in all respects as defendant's socket No. 1, and that after the receipt from complainant of notice of infringement it continued to sell that socket, as well as socket No. 2, which are exhibits in the case. The two sockets embody a switch mechanism controlled by a switch handle. Socket No. 1 has binding screws on top of the socket, and socket No. 2 has binding screws on the sides of the socket. The inclosing case and the screw shell are identical in the two sockets, but the form of the insulating base and certain parts of the switch mechanism differ in some particulars in the two sockets. The complainant's expert thought that socket No. 1 embodies all of the elements of the claims now in suit, and that socket No. 2 embodies all of the elements of claims 2, 3, 6, and 10. . In his opinion these elements have the characteristics and co-operate in the manner and produce the result of the patent in suit. The expert of the defendant, on the contrary, testified that neither of these sockets embodies the subject-matter in the relation expressed and for the specific objects set forth of any of the claims of the patent. As is usual in such cases as this, the court must, having found the patent valid, determine which of these experts is right in its opinion on the question of infringement. In deciding this question it is necessary to decide whether the patent is entitled to a broad or a narrow construction.

The patentee invented just one thing, namely, an arrangement of an old and entirely familiar part of an electric lamp socket by which the switch mechanism for connecting the incandescent electric lamp into or out of circuit was placed in the cavity of a properly made porcelain holder and then clamped down by a porcelain cover, so that there was nothing holding the operative parts in place but the tightness with which they were packed. The lamp socket of the patent, when gotten together, is like any other lamp socket, and functions in exactly the same way.

In construing the patent it is necessary to remember that we are dealing with an exceedingly crowded art and with minute details. If the device in question were one for turning on or off a supply of gas, water, or heat, it is hardly probable that a patent for such a device would be very seriously considered in a court of equity or by the Com-

missioners of Patents. The most liberal Commissioner would hardly think of issuing a patent therefor, unless convinced that a distinctly forward step had been taken. With the art progressed as far as this art was in 1903, when this patent was taken out, small improvements might be made in the apparatus used; but this could never be the subject of a patent, unless some result was accomplished which required the exercise of the inventive faculties, and not merely the work of a skilled electric worker. The patentee says:

"The important features of the present invention relate to the construction of the insulating base and the manner in which the switch mechanism is mounted upon or combined with the base."

Again he says that:

"The object of the invention is to reduce the number of parts, to render the device more simple in operation, and to reduce the cost of manufacture, particularly in the construction of the base or plastic insulating material, such as porcelain."

In other words the description and the claims are confined to details in construction which produce no new result. The claims, therefore, must be strictly confined to the improvements shown.

The claims in suit are claims 2, 3, 6, 7, and 9. Claim 2 reads as follows:

"In an incandescent electric lamp socket and in combination, a two-part insulating base chambered to receive switch mechanism, and switch mechanism mounted therein comprising in part a contact spring adapted to be confined under compression between the base members and thereby to retain said switch mechanism in place by simple engagement therewith of the chamber walls of the base, substantially as described."

Claim 3 reads as follows:

"In an incandescent electric lamp socket and in combination, a two-part insulating base, one part provided with an inwardly open shaft bearing and the other with a recess disposed opposite said bearing; switch mechanism comprising in part a switch shaft adapted to rotate in said bearing; a switch block, mounted upon said shaft to be rotated thereby, a spring contact mounted in said recess in the one base member and engageable under compression with said switch block and adapted to act there through to hold said shaft to its bearing in the other base member; and a contact disposed in opposition to said spring contact and adapted to be connected therewith by said block at certain times, substantially as described."

Claim 6 reads as follows:

"In an incandescent electric lamp socket and in combination, a switch shaft, a switch block loosely mounted upon said shaft to be rotated thereby and capable of self-adjustment thereupon, an insulating base provided with bearings for said shaft and with a chamber adapted to closely confine said switch block, having oppositely disposed walls adapted to engage and guide the self-adjustable block in its rotary movements, and oppositely-disposed contacts adapted to be connected at certain times by said switch block, substantially as described."

Claim 7 reads as follows:

"In an incandescent electric lamp socket and in combination a pair of die-formed insulating blocks, a pair of contact springs separately mounted upon the same die-formed face of one of said blocks whereby they are definitely spaced apart, one of said springs being extended outwardly from between

said blocks and offset around and overhanging a portion of the other of said blocks, contacts respectively in circuit with said springs and adapted to connect with the terminals of an incandescent electric lamp, an oblong switch block adapted to be operated between said springs to make and break said circuit, and means for operating the switch block, substantially as described."

Claim 9 reads as follows:

"In an incandescent electric lamp socket and in combination, a two-part insulating base, and a spring contact plate having at one end an offset shank clamped between the base members, and having its other end bifurcated and the members thereof projected one into the path of one of the terminals of an incandescent electric lamp mounted in the socket and the other into the path of a switch block mounted on said base, substantially as described."

Claim 12 was originally put in suit, but was abandoned on the argument in this court. Claim 2 well describes the real invention. It consists, as there described, in holding a contact spring under compression between the two insulating blocks of porcelain and utilizing the force so developed in said contact spring to hold essential parts of the switch mechanism in position by simple engagement with the chamber walls of the porcelain blocks. Neither of defendant's sockets, No. 1 nor No. 2, contains the sole novel element of this claim. In each of defendant's sockets the contact spring confined under compression between the base members is the spring which is permanently attached to the base member, in which it is mounted by the screw 7, and which, therefore, neither maintains itself nor any part of the switch mechanism in place by simple engagement therewith of the chamber walls of the base.

In the course of the argument in this court defendant's counsel admitted that its socket No. 1 came nearer infringing claim 7 than it did any of the other claims. If claim 7 is not infringed by that socket, it is our opinion that it does not infringe any of the claims. Claim 7 is analyzed in the following form:

| Elements. | Description. |
|---|---|
| 1. A pair of die-formed insulating base members | secured together. |
| 2. A lamp receiving socket sleeve | mounted upon the outer end of the outer base member and having adjacent thereto a cut-away portion. |
| 3. A switch block | |
| 4. Means | for operating said block. |
| 5. A spring contact | mounted upon the end of the inner base member adjacent to the outer base member and engageable with said block on one side thereof. |
| 6. A spring plate | mounted upon said inner end of the inner base member offset from between the base members around and overhanging the outer base member and having its outer end bifurcated, one arm thereof projecting through the cut-away portion of the socket sleeve into the path of one of the terminals of an inserted lamp, and the other arm into the path of said switch block on the other side thereof. |

The plaintiff's expert found that defendant's socket No. 1 comprised in combination—

1. A pair of die-formed insulating blocks.
2. A pair of contact springs.
3. Contacts respectively in circuit with said springs.
4. An oblong switch block.
5. Means for operating the switch block.

In other words he found all the elements of claim 7 in defendant's socket No. 1.

We do not however share in this view of the matter. The subject-matter of claim 7 is not present either in identity or mechanical equivalents in defendant's socket No. 1. In that socket one contact spring is permanently connected to the under surface or bottom of the recess in one of the base members, while the other contact spring is permanently connected to the other base member by means of a bent tongue-like portion thereof which passes through a hole in the latter base member and extends over the lower portion of the said base member. In claim 7 of the patent in suit the two springs are both separately mounted upon the lower of the blocks, one of the springs being extended outwardly from between the blocks and offset around and overhanging a portion of the other of the blocks. In defendant's socket the spring is permanently located, and cannot be separated from the base member on which it is mounted without deforming the spring, and the end of the spring does not extend outwardly from between the blocks or base members, and it is not offset around a portion of the block, but is permanently attached to and passes through the body of the block.

So far as claim 9 is concerned, it is quite clear to us that neither parity of construction, nor mode of application, nor operation is to be found between the specifically defined element of the claim and the contact plate of defendant's socket No. 1. In defendant's socket the spring has no off-set shank clamped between the base members, but the main body portion of the spring plate is held between the ends of the pillars on the base member and the bottom of the recess in the other base member, on which latter the spring is permanently mounted. And in defendant's socket the plate has no bifurcated end at all. On the contrary, it has one extreme end, constituting the T-head thereof, adapted to be engaged by the switch block, and the other extreme end, which is bent through an opening, to underlie the center. The defendant's spring plate does not serve the same purpose and function as the bifurcated end of the spring of the patent in suit.

As to claim 10, it is not infringed by either defendant's socket No. 1 or by socket No. 2. The construction and relative arrangement of the contact spring plate with its bifurcated end finds no concomitant, either structurally or operatively considered, in defendant's contact plate.

Claim 3 is for a combination of elements so incomplete as to be dangerous in use, and therefore not useful, and so not patentable.

Claim 6 is too broad, and covers by its terms the older constructions of Dixon and of Schutt. Every element of the claim is old, and used in many substantially similar combinations. The claim is void for lack of patentable subject-matter.

Decree affirmed.